United States Courts
Southern District of Texas
FILED
*September 01, 2026*
Nathan Ochsner, Clerk of Court

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | **CRIMINAL NO. 4:26-cr-577** |
| | § | |
| **v.** | § | |
| | § | |
| **QUEENIE WENQING LEI** | § | **UNDER SEAL** |

# INFORMATION

THE UNITED STATES CHARGES:

## GENERAL ALLEGATIONS

At all times material to this Information:

### Overview of the prostitution ring

1. The defendant, Queenie Wenqing Lei ("LEI"), along with others known and unknown, engaged in an interstate prostitution scheme involving multiple females.

2. Prostitution was illegal in Minnesota, pursuant to Minnesota Statute 609.322.

3. Unindicted Co-conspirator 1 (CC-1) operated a prostitution enterprise that promoted commercial sex acts for money and directed females to be trafficked in hotels, apartments, and massage parlors.

4. CC-1's prostitution enterprise spanned multiple states to include Minnesota, Wisconsin, North Dakota, and other states. CC-1's operation utilized websites to promote commercial sex at various locations.

5. CC-1 and others communicated on the WeChat platform. WeChat is a Chinese instant messaging, social media, and mobile payment application.

6. The WeChat communications discussed flight information, hotels, and travel to various locations for commercial sex acts throughout the country. Individuals directly communicated with the sex buyers ("Johns") to arrange to meet with a female. These individuals then notified the

female when a John arrived, the arranged length of time, and the sexual acts expected to be performed with the John.

7. The females engaged in sexual acts with the John and then sent a portion of their proceeds from prostitution to LEI by money orders or via digital transfer applications such as Zelle.

8. A portion of the proceeds were sent to LEI in part for the purpose of purchasing commercial sex advertisements via cryptocurrency or other means, which supported CC1's prostitution operation.

**<u>The Defendant and Relevant Entities</u>**

9. LEI was a resident of Sugar Land, Texas, which was in the Southern District of Texas.

10. Company A is an organization that advertised as a classified advertising website that was widely used for personal ads, dating services, escorts, and other adult services.

11. Company B is an organization that advertised as a classified advertising website that was widely used for personal ads, dating services, escorts, and other adult services.

12. LEI owned a business registered in Texas under the name Crypto Agency, LLC, which was headquartered in the Southern District of Texas.

13. LEI's father-in-law owned a business registered in Texas under the name Vyes, LLC, which was headquartered in the Southern District of Texas.

14. LEI owned a cryptocurrency account with Company C, User ID ending in 4899. Company C was a cryptocurrency exchange business based in New York, New York.

15. LEI owned a cryptocurrency account with Company D, User ID ending in 6405. Company D was a cryptocurrency exchange business based in San Francisco, California.

**<u>Relevant Financial Institutions</u>**

16. LEI owned an account at Bank A, ending in 9934. Bank A was a financial institution based in Charlotte, North Carolina.

17. LEI owned an account at Bank B, ending in 3735. Bank B was a financial institution based in McLean, Virginia.

18. LEI owned accounts at Bank C, ending in 5574, 0912 and 9113. Bank C was a financial institution based in New York, New York.

19. LEI owned an account at Bank D, ending in 9225. Bank D was a financial institution based in New York, New York.

20. LEI owned an account at Bank E, ending in 9670. Bank E was a financial institution based in Riverwoods, Illinois.

21. LEI owned accounts at Bank F, ending in 3829 and 0831. Bank F was a financial institution based in San Francisco, California.

22. LEI owned accounts at Bank G, ending in 8668 and 3808. Bank G was a financial institution based in Pittsburgh, Pennsylvania.

23. LEI owned accounts at Bank H, ending in 3542. Bank H was a financial institution based in Houston, Texas.

24. LEI owned accounts at Bank I, ending in 0249. Bank I was a financial institution based in Pasadena, California.

25. LEI owned an account at Bank J, ending in 0025. Bank J was a financial institution based in Sandy, Utah.

## **COUNT ONE**
## **(Conspiracy)**

26. Paragraphs 1 through 25 are re-alleged and incorporated by reference as though fully set forth herein.

27. From in or around January 18, 2019, through at least in or around July 30, 2024, in the Southern District of Texas and elsewhere within the jurisdiction of the Court, the defendant,

**QUEENIE WENQING LEI,**

knowingly and willfully, that is, with the intent to further the objects of the conspiracy, conspired and agreed with other persons known and unknown, to commit certain offenses against the United States, namely: to knowingly transport individuals in interstate commerce with intent that such individuals engage in prostitution, and attempt to do so, in violation of Title 18, United States Code, Section 2421.

**OBJECT OF THE CONSPIRACY**

28. The object of the conspiracy involved promoting, managing, and facilitating illegal prostitution activity through the movement of females throughout the United States for the financial benefit of the conspirators.

**MANNER AND MEANS OF THE CONSPIRACY**

29. The manner and means by which LEI and her co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

30. As part of the scheme, LEI and co-conspirators coordinated the movement of money used to further a prostitution network in the United States. The money was used to purchase advertisements for the females engaged in prostitution. LEI also received money that derived from prostitution and moved it to others in the scheme.

31. As part of the scheme, LEI controlled several bank accounts that received and sent numerous transactions that supported the advertising of the prostitution network and distributing the financial gains from the prostitution network.

32. As part of the scheme, LEI and her co-conspirators used cryptocurrency to pay for online advertisement regarding women willing to engage in sexual acts for money.

33. As part of the scheme, LEI and her co-conspirators used social media sites to advertise prostitution in multiple states in the United States.

34. As part of the scheme, LEI and her co-conspirators used encrypted applications to communicate about money movement and the movement of the females engaged in sexual acts for money.

35. As part of the scheme, the women involved in sexual acts for money directed their proceeds of prostitution to LEI by sending LEI money orders purchased from the United States Postal Service and Western Union. LEI then deposited these money orders into a bank account.

**<u>OVERT ACTS</u>**

36. In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the co-conspirators committed and caused to be committed one or more of the following overt acts, among others, in the Southern District of Texas and elsewhere:

37. LEI assisted the conspiracy by purchasing commercial sex advertisements utilizing LEI's cryptocurrency accounts. CC-2 directed LEI on where to make the payment, and LEI would send CC-2 a receipt. The transactions below are related to WeChat communications LEI had with CC-2 that furthered the conspiracy:

A. On or about January 29, 2021, LEI opened Bank A account ending in 9934. On or about July 22, 2021, X.Y. sent approximately $400 via Zelle into LEI's Bank A account ending in 9934.

B. On or about July 23, 2021, M.Y. sent approximately $2,000 via Zelle into LEI's Bank A account ending in 9934.

C. On or about July 23, 2021, Y.W. sent approximately $1,000 via Zelle into LEI's Bank A account ending in 9934.

D. On or about July 28, 2021, Y.W. sent approximately $1,000 via Zelle into LEI's Bank A account ending in 9934.

38. On or about July 26, 2021, LEI sent $5,000 from her Bank A account ending in 9934 to LEI's Coinbase account.

39. On or about July 26, 2021, LEI sent $4,000 from her Bank A account ending in 9934 to LEI's Coinbase account.

40. On or about July 28, 2021, LEI sent $5,000 from her Bank A account ending in 9934 to LEI's Coinbase account.

41. On or about July 30, 2021, LEI sent $6,000 from her Bank A account ending in 9934 to LEI's Coinbase account.

42. On or about July 29, 2021, LEI deposited approximately $4,000 into her Bank A account ending in 9934. The money derived from prostitution.

43. On or about August 29, 2019, LEI opened Bank C account ending in 5574. On or about July 29, 2021, LEI deposited approximately $4,000 into her Bank C account ending in 5574. The money derived from prostitution.

44. On or about August 9, 2021, LEI deposited approximately $2,000 into Bank C account ending in 5574. The money derived from prostitution.

45. On or about August 9, 2021, LEI deposited approximately $1,800 into Bank C account ending in 5574. The money derived from prostitution.

46. On or about August 15, 2021, LEI provided a photo to CC-2 confirming payment of 0.00433278 BTC to recipient's wallet.

47. On or about August 15, 2021, LEI's Company C account sent 0.00473 BTC, which included a 0.0004 BTC fee, to a bitcoin address which was sent directly to Adult Search in furtherance of the prostitution scheme.

48. On or about August 21, 2021, LEI provided a photo to CC-2 confirming payment of 0.00406184 BTC.

49. On or about August 21, 2021, LEI's Company D account sent 0.00406184 BTC to a bitcoin address associated with Adult Search in furtherance of the prostitution scheme.

50. Between August 2021 to March 2023, LEI's Company C account sent approximately 25.03 BTC, equivalent to approximately $51,279.66, to Company A, an advertisement company known for commercial sex ads.

51. Between September 2020 to March 2023, Defendant LEI's Company C account sent approximately 46.0496 BTC, equivalent to $1,043,784.93, to Company B, an advertisement company known for commercial sex ads.

52. Between June 2021 to November 2022, Defendant LEI's Company D account sent approximately 3.9473 BTC, equivalent to $131,480, to Company A, an advertisement company known for commercial sex ads.

53. Between January 2021 to October 2022, Defendant LEI's Company D account sent approximately 12.5111 BTC, equivalent to $495,520, to Company B, an advertisement company known for commercial sex ads.

In violation of Title 18, United States Code, Section 371.

**<u>COUNT TWO</u>**
**(Operating an Unlicensed Money Transmitting Business)**

54. Paragraphs 1 through 25 are re-alleged and incorporated by reference as though fully set forth herein.

55. Beginning in or around January 2021, and continuing until in or about July 2024, in the Southern District of Texas and elsewhere within the jurisdiction of the Court, defendant,

**QUEENIE WENQING LEI,**

did conduct, control, manage, supervise, direct, and own all or part of an unlicensed money transmitting business affecting interstate and foreign commerce, to wit: a money exchange business,

that failed to comply with the money transmitting business registration requirements under Section 5330 of Title 31, United States Code, and the regulations prescribed thereunder.

In violation of Title 18, United States Code, Section 1960.

**COUNT THREE**
**(Laundering of Monetary Instruments)**

56. Paragraphs 1 through 25 are re-alleged and incorporated by reference as though fully set forth herein.

57. On or about August 30, 2021, in the Southern District of Texas and elsewhere, defendant,

**QUEENIE WENQING LEI**,

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, the interstate transportation of individuals with intent that such individuals engage in prostitution, a violation of Title 18, United States Code, Section 2421, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, to wit: a payment in the amount of $1,125.47 to a Chase credit card account ending in 9722 in the name of Queenie W. Lei, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

**NOTICE OF FORFEITURE**
**(18 U.S.C. §§ 981(a)(1)(C) and 2428)**

Pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 2428, the United States gives notice to defendant,

**QUEENIE WENQING LEI**,

that in the event of conviction of the offense charged in Count One of this Information, the United States will seek forfeiture of all property that was used or intended to be used to commit or to facilitate the commission of the offense; and all property, real or personal, which constitutes or is derived from proceeds traceable to such offense.

**NOTICE OF FORFEITURE**
**(18 U.S.C. § 982(a)(1))**

Pursuant to Title 18, United States Code, Section 982(a)(1), the United States gives notice to defendant,

**QUEENIE WENQING LEI**,

that in the event of conviction of any of the offenses charged in Counts Two and Three of this Information, the United States will seek forfeiture of all property, real or personal, involved in such offenses or traceable to such property.

**Money Judgment and Substitute Assets**

Defendant is notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture. Defendant is notified that in the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exists, the United States will seek to forfeit any other property of the Defendant up to the total value of the property subject to forfeiture.

AARON F. REITZ
United States Attorney

By: /s/ Rodolfo Ramirez
Rodolfo Ramirez
Assistant United States Attorney